STATE OF TENNESSEE ex rel.
JAMES DOYLE

*v.*

C. MURRAY HENDERSON, Warden, Tennessee State
Penitentiary.

425 S.W.2d 593.

(*Jackson,* April Term, 1967.)

Opinion filed March 8, 1968.

BRETT B. STEIN, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General and PAUL E.
JENNINGS, Assistant Attorney General, Nashville, for
the State.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The only question involved in this lawsuit is whether or not the plaintiff in error was denied his right to an appeal from his original conviction. After an evidentiary hearing in this petition for habeas corpus the trial court denied the petition, and it is from this denial that an appeal has been seasonably perfected.

The petitioner was indicted in 1954 for the offense of murder in the first degree. He was arraigned and entered a plea of not guilty. About five months after his arraignment a trial was had before a jury and the petitioner was found guilty and his sentence was fixed at ninety-nine (99) years in the State penitentiary.

In May, 1966, the present petition for the writ of habeas corpus was filed in the Criminal Court of Davidson County, Tennessee. This petition was duly transferred to the Criminal Court of Shelby County, Tennessee, pursuant to T.C.A. sec. 23-1840.

In the evidentiary hearing had on this petition for habeas corpus the petitioner testified that he was repre-

sented in his original trial in 1954 by Mr. Hugh Stanton, Sr., of the Public Defender's office of Shelby County; that he did not tell Mr. Stanton that he desired an appeal, but that no one advised him of his right to an appeal and he would have appealed the case if he had known of this right; that, after the jury's verdict finding him guilty and fixing the period of his confinement, the trial judge asked counsel if he wished to appeal and counsel stated, "No Your Honor". Petitioner further testifies that he first learned of his right to an appeal in 1958 (that is, about four years after his conviction); that he asked no question concerning an appeal even after the trial judge inquired of his counsel at the original trial if he wished to appeal the case; that he had previously been convicted of an assault with intent to commit murder while in the Army in 1944; and that he did not attempt to contact the judge, his attorney or the prosecutor after he was sentenced.

Petitioner further testified that he did not testify at his original trial in 1954 nor were any witnesses offered in his behalf and that he did not give Mr. Stanton the names of any witnesses.

Mr. Stanton testified that one of his assistants investigated the case, but because of the probability of the death penalty being invoked that he, Mr. Stanton, tried the case and that due to the fact that he decided to try this case the case was continued from time to time to allow Mr. Stanton time for preparation; that there was no argument on the facts as to whether petitioner had committed the offense; that petitioner was apprehended near the location of the crime, blood was on his person, eye witnesses to the crime were available and petitioner had stated to the police at the time of his apprehension, "I

don't know why I did it''; that he, Mr. Stanton, feared the jury would invoke the death penalty and he therefore urged the petitioner to plead guilty; that he would state positively that no appeal was mentioned to him, and; ''There is no question—that the matter was never discussed between he and I or it was not mentioned one way or the other, there is no question about it. As a matter of fact, when the jury came back and gave him 99 years, he said, 'I felt relieved', that he didn't have a death case on his hands.''

The assignments of error state as a matter of law under the proof as summarized above that the petitioner was denied his right to an appeal as guaranteed by the due process clause of the Fourteenth Amendment of the Constitution of the United States; and that the court erred in not finding from all this proof that the petitioner did not waive his right to appellate review.

The petitioner was convicted about fourteen years prior to the filing of his petition for habeas corpus, and after this fourteen years he decided that he desired to appeal his conviction. The evidence is uncontradicted that following the verdict the petitioner's counsel was asked by the trial judge if an appeal was desired and counsel replied in the negative. The writer of this opinion has known Mr. Hugh Stanton for over thirty years and knows as a matter of fact that he is one of the most conscientious men he has ever known as well as one of the best criminal lawyers in the State.

It is clear to us after reading this record, and there is no question about it, that the petitioner prior to this conviction had been convicted of a felony while in military service, yet notwithstanding these things the petitioner now states that it was some four years after

his conviction in 1954 before he learned of his right to an appeal, and then he waits approximately ten years before he files the petition which is now before us. The petitioner likewise admits that he did not at any time subsequent to the day of his conviction, and prior to the filing of this writ, attempt to contact anyone to request information with regard to an appeal. It seems to us that the statement of counsel herein as to what happened in 1954 constituted an oral waiver of appeal. Here is a man who had been convicted prior to this time and sentenced to serve fifteen years for attempted murder and then now murders somebody and without a scintilla of proof to the contrary in his favor, could have gotten the electric chair, and counsel did everything he could to keep him from getting it by apparently cross-examination and appeal to the jury and then he sits idly by when asked by the trial judge if he wishes to appeal and hears his counsel say that they do not wish to appeal. When such is done it seems to us that this clearly constitutes an oral waiver of appeal.

There is no question under this record that petitioner did not testify in his own behalf; there were no witnesses offered in his behalf; and he did not inform his attorney, and does not claim to have done so, that there was anybody who could testify in his behalf. It would seem to us that any review of a conviction thereunder would be only on the testimony offered by the State. This record does not suggest any basis of error, either technical or evidentiary, upon which an appeal might be predicated. Mr. Stanton is a man of much experience and is not a "babe in the woods" in a trial of such cases, so if there had been the slightest chance of a reversal or of any rights being protected on behalf of this man he would

have certainly answered the trial judge in the affirmative and an appeal would have been perfected. It seems to us the absence of any evidence offered in behalf of this petitioner here either in mitigation or contradiction of the offense would severely curtail any possible review.

This question has been before this Court many times in recent years, and we have recognized without question the equality of rights of an indigent defendant as contrasted with a non-indigent. *Russell v. State ex rel. Arthur,* 218 Tenn. 118, 401 S.W.2d 586. In the case of *Nelms v. State,* 219 Tenn. 727, 413 S.W.2d 378, 381, when after reviewing the various statutes, giving one the right to appeal, etc., we held that: ''it is the responsibility not only of court-appointed counsel, but of the trial judge and of the District Attorney General as well to see that the rights of an indigent to an effective appellate review are protected * * *.'' In this case, that is *Nelms v. State,* supra, the factual situation was that an appeal had been prayed on behalf of the indigent but had not been perfected, and we held that an appeal should have been properly perfected and a bill of exceptions timely filed.

We are well aware and have read many times various cases from the Federal jurisdiction in reference to this question, but insofar as we can find there are no cases, nor is there any constitutional requirement, that one is entitled to appeal to an appellate court regardless of whether or not there are any questions to be there presented. We are familiar with, and have read a number of times, *Anders v. State of California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, holding that an indigent is entitled to appeal and to be ably represented by counsel where there might be evidence to ''arguably support the appeal''. It is not up to counsel to decide whether or not

the case is overly frivolous but this is up to the court when presented on brief and argument. We do not have this question or related questions here under the factual situation above reviewed, because clearly under this record there was no arguable thing that could have been presented to the appellate court.

The Federal Court in *Tucker v. Meadows*, D.C., 234 F.Supp. 882, stated with reference to our statutory sections of Title 40, Chapter 20, T.C.A., that: "The statutory scheme to protect the defendant at all stages of the proceeding is thus made explicit and unmistakable. The statute is not conditioned upon the request of the defendant, nor upon his indication of an intention to appeal. It is mandatory in character and any failure to observe its requirements necessarily constitutes a violation of a defendant's rights in the class of cases to which it applies." We recognized this principle in *Nelms v. State*, supra.

We have considered many cases in which we have reviewed *Griffin v. People of State of Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, and certain cases from our own jurisdiction tried in the Federal Court, such as *Miller v. Bomar*, D.C., 230 F. Supp. 204 and *Coffman v. Bomar*, D.C., 220 F.Supp. 343. The same rules apply to indigent defendants and to their right to appellate review.

■ It seems to us whether or not a defendant, and particularly this petitioner, has been deprived of his constitutional right to appellate review depends upon the facts and circumstances of his case. The legal principles as announced in each of the cases cited above merely furnish guidelines in the application of this protected right. As said above no court that we can find has held that a defendant must appeal his case or that a waiver

will not be recognized. The facts of this case, that is the case now before us, show that petitioner neither desired nor requested an appeal. This was not denied by him and his counsel testified that the facts clearly established his guilt to such an extent that there was no evidence offered in petitioner's behalf and none could be offered. His counsel and he apparently sitting there and hearing it all believed and felt that, and expressed relief that petitioner had not received a death sentence. It seems to us, and the only thing we could possibly gather from this evidence, that his able and experienced counsel might have well determined that there was nothing from which the petitioner could logically appeal.

We think, after careful consideration, that under a factual situation as here presented this amounts to an oral waiver of appeal and none of the constitutional rights of this petitioner has been violated by not granting him a new trial from which he could perfect an appeal. Apparently he didn't want an appeal at the time of the original trial, and apparently his counsel felt that nothing could be done if an appeal was granted and an appeal would have been merely a loss of time on behalf of the court and all parties. Thus it is that we affirm the judgment of the trial court herein.